# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-2666

MARTINA MONTGOMERY,

*Plaintiff-Appellant,*

v.

THOMAS P. STEFANIAK, JR.,
SALVADOR VASQUEZ, and
CLARENCE D. MURRAY,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:04-CV-49—**Rudy Lozano**, *Judge.*

_____

ARGUED MARCH 1, 2005—DECIDED JUNE 9, 2005

_____

Before KANNE, EVANS, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Martina Montgomery was fired
from her job as a court probation officer after her supervisors
learned that she and her fiancé had purchased a car from
a dealership employing a probationer whom she supervised.
Montgomery sued, claiming among other things that her
termination infringed her right of intimate association with
her fiancé and that she was denied procedural and substan-
tive due process. The district court dismissed all of Montgom-
ery's wrongful termination claims. She appeals, and we
affirm.

## I. History

Montgomery sued a number of defendants, including the car dealership, the court for which she worked, and the county in which the court was located. But we can ignore the majority of her complaint because this appeal addresses only Montgomery's claims against three judges on the court where she was employed. We recite the facts as they are provided in the complaint and present them in the light most favorable to Montgomery. *See Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004).

Montgomery accompanied her fiancé, Charles Heffner, to Shaver Motors in Merrillville, Indiana. Heffner tried to purchase a car, but his application for financing was denied because he had a poor credit history. Montgomery, however, had better credit than Heffner and the salesman told her that he could arrange financing for her to purchase a Toyota Corolla. Montgomery declined at first, but the salesman ultimately persuaded her to purchase the car. Montgomery and Shaver then signed a sales contract for the Toyota, and the couple left with the car. After Montgomery left the dealership, however, Shaver unilaterally changed the terms of the financing agreement. Specifically, Shaver paid off a balance Montgomery owed on a Mercury automobile she already owned and added that money into the price of the Toyota. Shaver claims it did so to improve the creditworthiness of Montgomery's application for financing, but Montgomery says that she never agreed to such an arrangement and that the salesman never told her that the Mercury loan would have any impact on her application. Montgomery learned of Shaver's action several days later when the finance company to which Shaver had sent her application called to tell her both that the Mercury was now included in the transaction and that it had approved her loan on significantly less favorable terms than those promised by Shaver.

Montgomery rejected the changes to the agreed-upon financing terms and immediately returned the Toyota to Shaver. But when she brought back the car, Shaver demanded that Montgomery reimburse the dealership the money it had paid on the Mercury. When Montgomery refused, claiming that she had never agreed to such an arrangement, Shaver threatened to report her alleged delinquency to her supervisors at the probation office. Eventually Shaver made good on its threat and called Montgomery's supervisor in an effort to harass Montgomery and pressure her to pay.

Shaver's call prompted the supervisor to investigate, and he discovered that a probationer supervised by Montgomery was employed at Shaver. The record does not reflect the nature of the probationer's employment, but he apparently played no role in the sale of the Toyota. Nonetheless, the court has a code of conduct that forbids probation officers from transacting business with any company employing probationers under their supervision. Thomas Stefaniak, Jr., Senior Judge of the Criminal Division of the Lake County Superior Court, who ultimately is responsible for probation department personnel, ordered Montgomery suspended and eventually fired for violating this policy. As permitted by the court's employee grievance system, Montgomery requested administrative hearings to appeal both her suspension and termination. Judge Stefaniak assigned Judge Salvador Vasquez to hear the appeals, and Judge Vasquez upheld Judge Stefaniak's decisions.[1]

Montgomery raised three claims against the judges. First, she claims that they interfered with her right of intimate association with her fiancé because she says she had a

---

[1] Montgomery's complaint in the district court also lists Judge Clarence Murray as a defendant but neither her complaint nor her brief on appeal makes any further mention of him. Accordingly, all claims against Judge Murray are waived.

constitutional right to purchase a car for him from Shaver. Montgomery also alleged that the judges denied her substantive and procedural due process by not providing her a pre-termination hearing. The district court dismissed the judges as defendants, *see* FED. R. CIV. P. 12(b)(6), and made its dismissals final, thus permitting this appeal, *see Greenwell v. Aztar Ind. Gaming Corp.*, 268 F.3d 486, 490 (7th Cir. 2001); FED. R. CIV. P. 54(b).

## II.  Analysis

### A.  Freedom of Intimate Association

Montgomery first argues that the judges' enforcement of the code of conduct interfered with what she describes as her freedom of intimate association with her fiancé. The defendants respond that Montomery's relationship with Heffner did not excuse her from complying with the rules governing her employment.

The Supreme Court has explained that the Constitution protects two distinct forms of free association. The first, freedom of expressive association, arises from the First Amendment and ensures the right to associate for the purpose of engaging in activities protected by the First Amendment. *See Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984); *Klug v. Chicago Sch. Reform Bd. of Trustees*, 197 F.3d 853, 857 (7th Cir. 1999). The second, freedom of intimate association, protects the right "to enter into and maintain certain intimate human relationships." *Roberts*, 468 U.S. at 617. The freedom of intimate association "receives protection as a fundamental element of personal liberty," *id.* at 618, and as such is protected by the due process clauses. *See Swank v. Smart*, 898 F.2d 1247, 1251-52 (7th Cir. 1990); *Mayo v. Lane*, 867 F.2d 374, 375 (7th Cir. 1989); *Bergren v. City of Milwaukee*, 811 F.2d 1139, 1144 (7th Cir. 1987); *Shondel v. McDermott*, 775 F.2d

859, 865-66 (7th Cir. 1985); *Akers v. McGinnis*, 352 F.3d 1030, 1035 (6th Cir. 2003); *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993).

We pause to note that the parties have confused the two forms of free association in their briefs and focus their arguments exclusively on the balancing test applicable to expressive association claims raised by public employees. *See Connick v. Myers*, 461 U.S. 138 (1983); *Pickering v. Board of Education*, 391 U.S. 563 (1968). Under this test, a plaintiff must first show that her associational activity relates to a matter of public concern; if she succeeds, the court then balances her interests against those of her employer. *See Klug*, 197 F.3d at 857. But the *Connick/Pickering* test applies only to those free association claims based on expressive association. *See id.*; *Weicherding v. Riegel*, 160 F.3d 1139, 1142 (7th Cir. 1998); *Messman v. Helmke*, 133 F.3d 1042, 1045-46 (7th Cir. 1998); *Balton v. City of Milwaukee*, 133 F.3d 1036, 1039-40 (7th Cir. 1998); *Gregorich v. Lund*, 54 F.3d 410, 414 (7th Cir. 1995); *Griffin v. Thomas*, 929 F.2d 1210, 1212-14 (7th Cir. 1991). The *Connick/Pickering* test's requirement that the plaintiff's association relate to a matter of public concern is inapplicable to a claim based solely on intimate association because a plaintiff's right of intimate association does not depend on her also exercising her separate and distinct right to engage in expressive activity. *See Anderson v. City of LaVergne*, 371 F.3d 879, 881 (6th Cir. 2004); *Parks v. City of Warner Robins*, 43 F.3d 609, 615 (11th Cir. 1995).

The proper analysis for Montgomery's claim is provided by *Zablocki v. Redhail*, 434 U.S. 374, 383-87 (1978), and other circuits have used this framework to address claims brought by public employees claiming interference with an intimate association. *See Akers*, 352 F.3d at 1039-40 (corrections employees fired for personal relationships with prisoners); *Singleton v. Cecil*, 176 F.3d 419, 423 (8th Cir. 1999) (en banc) (adopting analysis of panel decision in *Singleton*

*v. Cecil*, 133 F.3d 631, 634-35 (8th Cir. 1998)); *Montgomery v. Carr*, 101 F.3d 1117, 1124 (6th Cir. 1996) (public school teacher required to transfer to another school after she married another teacher); *Parks*, 43 F.3d at 615-16 (police officer forced to resign after she married a more senior officer); *see also Keeney v. Heath*, 57 F.3d 579, 580-81 (7th Cir. 1995). *Zablocki* establishes a two-part inquiry: if the challenged policy imposes a direct and substantial burden on an intimate relationship, it is subject to strict scrutiny; if the policy does not impose a direct and substantial burden, it is subject only to rational basis review. *Zablocki*, 434 U.S. at 383-87; *see also Smith v. Shalala*, 5 F.3d 235, 238-39 (7th Cir. 1993).

Montgomery's claim fails the *Zablocki* test. The defendants do not dispute that the relationship between two people engaged to be married qualifies as intimate, and we will assume that to be the case. But the defendants here did not "interfere directly and substantially" with Montgomery's right to associate with Heffner when they fired her for violating the code of conduct. *Compare Zablocki*, 434 U.S. at 387 (statute requiring persons owing child support to obtain a court order before marrying or face criminal penalties directly and substantially interfered with their right to marry), *with Akers*, 352 F.3d at 1040 (rule restricting correctional officers from non-work contact with prisoners was not direct and substantial burden because rule neither largely prevented employees from marrying nor prevented them from marrying a large portion of population). Indeed, the interference here was quite minimal. Montgomery alleged only that the code of conduct prohibited her from purchasing a car from Shaver. But she was free to purchase a car for her fiancé from any car dealership that did not employ one of her probationers and likewise remained free to associate with Heffner in any other way she pleased. The court's rule prohibiting probation officers from conducting business with companies employing their probationers may

have caused Montgomery some minor inconvenience, but it did not substantially impact her ability to associate with Heffner.

We thus review the code of conduct only under a rational basis test and conclude that the portion of code challenged by Montgomery bears a rational relationship to a legitimate government interest. *See Thielman v. Leean*, 282 F.3d 478, 485 (7th Cir. 2002). The Sixth Circuit addressed a similar case in which two state correctional employees were fired for violating a rule barring any outside contact with prisoners or probationers. *See Akers*, 352 F.3d at 1033-34. The court concluded that the rule met the rational basis test because the state has a legitimate interest in preventing fraternization between its prisoners and correctional employees. *Id.* at 1039. The judges here likewise have a legitimate interest in ensuring that probation officers conduct themselves in a manner that avoids even the appearance of impropriety. Probation officers have significant discretion when making sentencing recommendations and supervising probationers, and their decisions can greatly impact the liberty of convicted individuals. The code of conduct at issue here is rationally related to the court's interest in ensuring the impartiality of its probation officers. Accordingly, the district court correctly dismissed Montgomery's freedom of association claim.

## B.  Procedural Due Process

Montgomery next argues that the district court erred in dismissing her procedural due process claim because she says the court's personnel policy affords probation officers the right to a pre-termination hearing and argues that this purported policy created a property interest in her continued employment. But Indiana law provides that probation officers serve "at the pleasure of the appointing court." Ind. Code § 11-13-1-1(c); *see also* Ind. Code § 33-33-45-12(a)(2)

(Lake County probation officers "serve at the pleasure of the senior judge"); *In re Madison County Probation Officers' Salaries*, 682 N.E.2d 498, 500 (Ind. 1997) (per curiam). These statutes establish that Montgomery was an at-will employee who had no property interest in continued employment as a probation officer. *See Moulton v. Vigo County*, 150 F.3d 801, 804-05 (7th Cir. 1998). Despite the statutory language, Montgomery might still have established that she had a property interest in her job if she had shown that her employer adopted additional rules or regulations that gave her such a property interest. *See id.* at 805. Instead, she alleged only that the court's personnel policy provided her with the right to a pre-termination hearing. "The mere fact that an employee is entitled to a hearing before [s]he is terminated, however, does not establish that [s]he has a property right in [her] job." *Id.* Accordingly, the district court properly dismissed this claim.

## C.  Substantive Due Process

Lastly, Montgomery argues in a cursory fashion that the district court erred by dismissing her substantive due process claim. The scope of substantive due process, however, is very limited and protects plaintiffs only against arbitrary government action that "shocks the conscience." *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005) (internal citation and quotation omitted). Nothing about the defendants' actions here shocks the conscience. As discussed above, Montgomery had no property interest in her continued employment and the judges thus did not deprive her of a constitutionally protected right when she was fired. Furthermore, all that Montgomery claims the judges did was wrongfully terminate her employment, and this is insufficient to state a substantive due process claim unless she also shows that the defendants violated some other constitutional right or that available state remedies are

inadequate. *Wudtke v. Davel*, 128 F.3d 1057, 1062 (7th Cir. 1997). She has not done so.

### III. Conclusion

The district court correctly dismissed all of Montgomery's claims against the three judges. Accordingly, the judgment is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*