In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2619

JERRY G. MARKADONATOS,

*Plaintiff-Appellant*,

*v.*

VILLAGE OF WOODRIDGE,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11-CV-7006 — **James F. Holderman**, *Judge.*

ARGUED MAY 30, 2013 — DECIDED JANUARY 8, 2014

Before SYKES and HAMILTON, *Circuit Judges*, and
STADTMUELLER, *District Judge.*[*]

STADTMUELLER, *District Judge.* Under Title 5 of its Village
Code, the Village of Woodridge charges every arrestee in its
custody a $30 booking fee. Indeed, after Woodridge police
arrested the plaintiff-appellant for retail theft on January 8,

---

[*] The Honorable J.P. Stadtmueller of the Eastern District of Wisconsin,
sitting by designation.

2011, the Village collected its $30 booking fee from him, without any opportunity to contest that collection either before or after the fee was taken. Mr. Markadonatos is not alone—Woodridge has taken the same $30 fee from each of the large number of people arrested and booked in its vicinity. Thus, Mr. Markadonatos filed the putative class action suit at hand, under 42 U.S.C. § 1983, asserting that Woodridge's booking fee violates both the procedural and substantive due process rights of the class members. The district judge dismissed Mr. Markadonatos' initial and amended complaints, finding that Mr. Markadonatos had not stated a claim for relief. We agree. Mr. Markadonatos' procedural due process argument necessarily fails, and he lacks standing to seek relief under a substantive due process claim. We therefore affirm the decision of the district court.

## I. Background

Woodridge enacted Municipal Code 5-1-12(A), which imposes a $30.00 booking fee on any person subject to a custodial arrest. (Am. Compl. ¶ 12). Woodridge collects this fee without any hearing, and does not offer arrestees any opportunity to challenge the deprivation or seek reimbursement. (Am. Compl. ¶¶ 16–17).

Mr. Markadonatos was arrested and charged with retail theft on January 8, 2011, and taken to jail. (Am. Compl. ¶¶ 18–19). He was booked, and at that time, Woodridge collected its $30.00 booking fee from him. (Am. Compl. ¶ 20). Woodridge provided Mr. Markadonatos with a booking fee receipt, but did not ever provide him with a hearing at which he could challenge the booking fee. (Am. Compl. ¶ 20).

Thereafter, a court ordered that Mr. Markadonatos undergo a period of supervision, pursuant to Illinois law. (Am. Compl. ¶ 21). Mr. Markadonatos successfully completed that period of supervised release, and therefore received an adjudication of "not guilty" on his record. (Am. Compl. ¶ 22). Despite that favorable adjudication, Mr. Markadonatos never had an opportunity to seek the return of his booking fee, and he has never received a refund of the money that Woodridge seized from him. (Am. Compl. ¶¶ 23, 24).

Accordingly, he filed suit on behalf of himself and all of the arrestees who have been charged the booking fee, pursuant to 42 U.S.C. § 1983, arguing that the lack of a procedure to challenge the booking fee, as applied to each of arrestee individually, violates the arrestees' procedural and substantive due process rights. (Am. Compl. ¶¶ 1, 27–28, 35–44).

After allowing Mr. Markadonatos to file an amended complaint, the district court dismissed the case for failure to state a claim upon which relief could be granted, without ruling on the plaintiff's motion to certify a class. (Order, 7/10/12, at 7, 9).

Mr. Markadonatos appealed that decision to this Court, arguing that the district court erred in dismissing his amended complaint. We disagree and affirm.

## II. Discussion

The parties' briefs and arguments have focused upon substantive issues relating to procedural and substantive due process, but before we reach those substantive arguments, we must first address the issue of standing. We, of course, lack

jurisdiction over this matter, as did the district judge, to the extent that we determine that the plaintiff's allegations do not establish a "case or controversy." *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

After we make the standing determination, we may then turn to the substantive legal issues. In doing so, first, we must determine whether the district court erred in concluding that Woodridge's booking fee does not violate the procedural due process rights of Mr. Markadonatos. Second, we must decide whether the district court erred in dismissing Mr. Markadonatos' substantive due process challenge to the Woodridge booking fee.

It is important to distinguish between Mr. Markadonatos' procedural and substantive due process claims, for the two concepts are distinct from one another. Procedural due process rights guarantee that the state not deprive an individual of his or her property without providing adequate procedural safeguards against the erroneous deprivation thereof. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). To determine whether an individual's procedural due process rights have been violated, courts generally perform a three-part balancing test, first outlined by the Supreme Court in *Mathews*. The right to substantive due process, on the other hand, is more nebulous, and typically employed by courts to protect against arbitrary state action that shocks the conscience. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *Montgomery v. Stefaniak*, 410 F.3d 933, 939 (7th Cir. 2005).

Regardless of the differences between the concepts, Mr. Markadonatos' arguments on both procedural and substantive

due process present primarily legal issues, which we review *de novo*. *Ray v. City of Chicago*, 629 F.3d 660, 662 (7th Cir. 2011).

*A. Standing*

There are essentially three elements for standing. First, the plaintiff must have suffered an "injury in fact," requiring an invasion of the plaintiff's legally protected interest that is both concrete and particularized and actual or imminent. Second, the injury must have been caused by the conduct he complains of. And, third, it must be likely, as opposed to merely speculative, that a decision in the plaintiff's favor will redress his injury. *Lujan v. Defenders of Wildlife*, 504 U.S. at 560–61.

Here, our standing concerns stem primarily from the plaintiff's asserted injury in fact.[1] Mr. Markadonatos complains that he was deprived of $30 as a result of Woodridge's collection of the booking fee. And, indeed, Woodridge's collection of $30 is concrete, particularized, and actually did occur.

However, we still question whether Woodridge's collection of the booking fee was an invasion of Mr. Markadonatos' legal rights, particularly with regard to his substantive due process claim. On his procedural due process claim, Mr. Markadonatos has pled that he was deprived of $30 without a legally adequate opportunity to challenge that deprivation. And, to the extent that he is correct, he has standing to assert that claim, although this analysis requires us to delve more deeply into

---

[1] To the extent that we find an injury in fact, there can be no question that such injury is fairly traceable to Woodridge's action and would be redressed by a decision in Mr. Markadonatos' favor.

the substantive aspects of Mr. Markadonatos' procedural due process claim.

His substantive due process claim, on the other hand, gives us pause. Whereas Mr. Markadonatos' procedural due process claim clearly identifies Woodridge's alleged invasion of legal rights by its very nature—deprivation of property without legally adequate process—Mr. Markadonatos' substantive due process claim presents a much vaguer alleged invasion. He attempts to argue that collection of the $30 fee from individuals like him who have been adjudicated "not guilty" violates substantive due process. Mr. Markadonatos' situation, however, is much narrower than that. In fact, he was arrested *for cause* and was adjudicated not guilty only after completing a term of supervision as a result of admitting the factual basis for the charges against him. *See* 730 ILCS 5/5-6-1(c), 5/5-6-3.1(e), 5/5-6-3.1(f). In the narrowest sense, the eventual not guilty adjudication is largely irrelevant, as Woodridge collected the booking fee on the basis of the arrest. Thus, the fact of a for-cause arrest is much more probative of the question of whether collection of the booking fee from a custodial arrestee who was arrested for cause violates substantive due process. It is certainly a relevant aspect of Woodridge's collection of the booking fee from Mr. Markadonatos, and cannot be ignored as part of the factual background behind the imposition of the fee. As such, insofar as Mr. Markadonatos wishes to challenge Woodridge's booking fee on the basis of substantive due process, he may do so only to the extent that Woodridge's ordinance actually applied to him, as a for-cause arrestee who

was later adjudicated not guilty.[2] Therefore, in addressing Mr. Markadonatos' substantive due process claim, the Court will confine its analysis to addressing the substantive due process implications of imposing the booking fee upon for-cause arrestees taken into custody.

### B. Procedural Due Process

Having found that Mr. Markadonatos has standing to assert his procedural due process claim to the extent he has alleged an invasion of his legally-protected interests, we must perform the *Mathews v. Eldridge* balancing test to determine whether Mr. Markadonatos stated a claim for a procedural due process violation. Under that test, we must balance (1) Mr. Markadonatos' private interest in his $30; (2) the risk of erroneous deprivation under Woodridge's ordinance and probable value of any additional safeguards; and (3) the Government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424, at 334–35. Applying this balancing test, we must conclude that the district court was correct in holding that Mr. Markadonatos cannot state a procedural due process violation based upon Woodridge's booking fee ordinance. We therefore affirm that aspect of the district court's decision.

---

[2] In other words, Mr. Markadonatos lacks standing to make a broader challenge against application of the fee to all arrestees who are eventually adjudicated not guilty. In particular, he lacks standing to assert a claim that application of the fee to those arrested without cause violates substantive due process.

### 1. Mr. Markadonatos' Private Interest

Without a doubt, Mr. Markadonatos has an interest in retaining his $30. That amount is small, and Woodridge is certainly correct to point out that such small cash amounts are generally given little weight under the *Mathews* balancing test. (Appellee's Br. at 8–9 (citing *Van Harken v. Chicago*, 103 F.3d 1346, 1353 (7th Cir. 1997); *Sickles v. Campbell Cty.*, 501 F.3d 726, 729–30 (6th Cir. 2007); *Slade v. Hampton Roads*, 407 F.3d 243, 247, 251–53 (4th Cir. 2005); *Broussard v. Parish of Orleans*, 318 F.3d 644, 647–48, 657 (5th Cir. 2003)). Nonetheless, we must conclude that the $30 fee is entitled to at least *some* weight in the balancing scheme.

### 2. Risk of Erroneous Deprivation

The risk of an erroneous deprivation, here, is practically non-existent. Furthermore, to the extent that any deprivation *does* exist, additional safeguards would not in any way reduce the risk thereof.

On the first of those points—the fact that risk of erroneous deprivation is practically non-existent—one need only look to the Woodridge scheme. Under the scheme, every person who is arrested is charged the booking fee, regardless of whether they were arrested without probable cause. Thus, a Woodridge employee determining whether to charge the booking fee is presented with a binary choice: "yes" the booking fee must be charged to a person who has been arrested and is being booked by the Village; or "no" the booking fee must not be charged to a person who has not been arrested and is not being booked by the Village. This determination is made all the easier by the fact that the booking fee is collected only upon an individual's

arrest and booking. Thus, the Court cannot envision any situation in which one who has not been arrested is charged the booking fee. That is, it is only when one is arrested and booked that the collection of the fee occurs, thus making the potential for erroneous deprivation practically non-existent.

There is practically no risk of an erroneous deprivation,[3] and, therefore, the need for a hearing—particularly a formal hearing—is extremely low. *Barbian v. Panagis*, 694 F.2d 476, 488 (7th Cir. 1982) (citing, among many other cases, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982); *Codd v. Velger*, 429 U.S. 624 (1977)). Here, Mr. Markadonatos was arrested and later appeared before a judge. Thus, if he believed that he was not or should not have actually been arrested, he had the opportunity to alert both the arresting officer and the judge hearing his case of that fact. While neither of these opportunities is formally provided for in the statute, they are more than sufficient to safeguard against an erroneous deprivation that will practically never occur.

Moreover, even if there were *some* potential for erroneous deprivation, we cannot envision any set of additional procedures that would reduce that risk. A hearing, either before or after the time of booking, to determine whether any individual

---

[3] We must note, here, that Mr. Markadonatos seems to fundamentally misunderstand this portion of the analysis. He appears to argue that any collection of fees from a person who is ultimately adjudged "not guilty" is an erroneous deprivation. But that goes outside of the procedural due process analysis and into the substantive due process realm, by ignoring the text of the statute, which imposes the booking fee on any person who is arrested and booked, and delving into a prescriptive argument on what the statute *should* be.

is subject to the booking fee would be largely meaning-less—the hearing would establish that the arrestee was arrested and booked. And that fact, alone, subjects the arrestee to the fee. Thus, there would be practically no value in requir-ing any additional procedure.

### 3. *Woodridge's Governmental Interest*

Woodridge has an interest in the specific $30 it took from Mr. Markadonatos, as that amount should offset at least a portion of the administrative costs associated with processing Mr. Markadonatos' arrest. Beyond that specific interest, Woodridge also possesses a more general interest in the function involved in collecting $30 from individual arrestees like Mr. Markadonatos, insofar as it wishes to offset the myriad of costs associated with temporarily detaining all of Wood-ridge's arrestees.

Finally, we must also note that Woodridge also has an interest in avoiding an additional hearing before or after taking the $30 booking fee. Such an additional administrative proce-dure would likely entail substantial costs, such as the salary costs of the person designated to preside over the hearing and arresting officers required to attend and testify.

### 4. *Balancing of the* Mathews *Factors*

Balancing each of the above-described *Mathews* factors, we conclude that the district court was correct to hold that Wood-ridge's booking fee ordinance does not violate Mr. Markadonatos' procedural due process rights.

Simply put, Woodridge's general interest in covering booking costs of the arrestees in its custody, and specifically in

offsetting the costs of holding Mr. Markadonatos temporarily, outweighs Mr. Markadonatos' own interest in his money, especially when balanced with the exceedingly low likelihood that the fee would be imposed on him or other arrestees erroneously. There is some minimal amount of protection for ordinary citizens, insofar as they may argue to an arresting officer or later to a judge that the fee should not be charged against them or should be returned. That protection is more than sufficient to safeguard against the exceedingly low risk that a person who is not arrested will have the booking fee taken from him. This is fully consistent with the opinions of other circuits, which have determined that routine accounting and deduction of fees from detainees is not constitutionally problematic, due to the low amount of discretion and minimal risk of error. *See, e.g.*, *Sickles v. Campbell Cty.*, 501 F.3d 726, 730 (6th Cir. 2007); *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 253–54 (4th Cir. 2005); *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000).

Finally, though this goes to the heart of Mr. Markadonatos' substantive due process challenge, we must also note that, even if we were to determine that there was some potential for erroneous deprivation, due, for instance, to the risk of a false arrest, there are state remedies available to address such a wrong, under which arrestees would be entitled to the return of their booking fee. And, so long as there is such a meaningful post-deprivation remedy available, there is no violation of arrestees' procedural due process rights. *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996).

*C. Substantive Due Process*

As we mentioned above when discussing standing, Mr. Markadonatos may challenge Woodridge's booking fee on substantive due process grounds only to the extent it actually applied to him, as a for-cause custodial arrestee who was later adjudicated not guilty.

This is a steep hill to climb. Courts generally employ substantive due process to protect plaintiffs "only against arbitrary government action that 'shocks the conscience.'" *Montgomery*, 410 F.3d at 939 (quoting *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005)). In fact, "[s]ubstantive due process depends on the existence of a fundamental liberty interest." *Idris v. Chicago*, 552 F.3d 564, 566 (7th Cir. 2009) (citing *Washington v. Glucksberg*, 521 U.S. 702, 719–22 (1997)). In the absence of a fundamental right, we may only review the law to determine whether it is arbitrary, such that it would flunk the rational-basis test that applies to all legislation. *Idris*, 552 F.3d at 566 (citing *National Paint & Coatings Ass'n v. Chicago*, 45 F.3d 1124 (7th Cir. 1995); *Saukstelis v. Chicago*, 932 F.2d 1171 (7th Cir. 1991)).

Mr. Markadonatos' complaint does not implicate a fundamental right. The $30 fee is extremely modest, and of an amount that does not rise to the level of a fundamental right. *Id.* ("The interest at stake is a $90 fine for a traffic infraction, and the Supreme Court has never held that a property interest so modest is a fundamental right."). Accordingly, we do not believe that any fundamental right is implicated, here, and therefore we need only ensure that Woodridge's booking fee is rational and not arbitrary.

Woodridge's booking fee clearly passes the rational basis test. In imposing the fee, Woodridge hopes to offset the cost of booking arrestees, or at the very least to collect revenue, either of which is a legitimate goal. *Id.* The collection of $30 from each for-cause arrestee is clearly rationally related to that goal, seeing as it takes money to cover the administrative costs of booking from the individuals whose actions caused the cost to begin with. Certainly, there are some inefficiencies in the system. But, an imprecise match between process and objective is permissible, even if greater precision is possible. *See, e.g., Vance v. Bradley*, 440 U.S. 93, 108–09 (1979); *Heller v. Doe*, 509 U.S. 312, 320–21 (1993); *Pro-Eco, Inc. v. Bd. of Comm'rs of Jay Cty.*, 57 F.3d 505, 514 (7th Cir. 1995). Therefore, we must conclude that Woodridge's booking fee is rational, and is not in any way arbitrary.[4]

For these reasons, we must conclude that Woodridge's booking fee does not violate Mr. Markadonatos' right to substantive due process. The district court was correct to dismiss that portion of his claim, and we affirm in that regard.

### III. Conclusion

For these reasons, we are obliged to conclude that Woodridge's booking fee does not violate Mr. Markadonatos' rights to procedural or substantive due process. The district court

---

[4] To the extent that Mr. Markadonatos may make an argument under the Equal Protection Clause (and then only to the extent that the argument is not waived, which is highly debatable), such an argument would nonetheless fail under the same rational basis analysis.

correctly dismissed this case, and accordingly we AFFIRM that decision.

SYKES, *Circuit Judge*, concurring. I join Judge Stadtmueller's opinion for the court. I write to highlight a key conceptual distinction that separates my view of this case from Judge Hamilton's. Markadonatos argues that the Village of Woodridge ordinance imposing a $30 jail booking fee violates his right to procedural and substantive due process. The crux of his procedural due-process claim is that the fee is collected automatically, at the time of custodial arrest and booking, without any formal process at all. The crux of his substantive due-process claim is that the fee is collected from everyone who is arrested and booked into the jail regardless of whether the arrest was lawful, a criminal charge is filed, or the person is found guilty.

As Judge Stadtmueller explains, Markadonatos lacks standing to challenge the Village's booking fee on substantive due-process grounds. Markadonatos does not allege that he was arrested without probable cause; nor does he allege that he was never charged with a crime, that the charge against him was dismissed, or that he was acquitted. To the contrary, it is undisputed that Markadonatos was lawfully arrested and charged with retail theft, entered a guilty plea, and was sentenced to a 12-month term of supervision and ordered to pay various court costs and criminal-justice fees. He alleges that "[a]t the conclusion of the supervision[,] the charge on his record will be listed as 'not guilty'." His brief cites 730 ILL. COMP. STAT. 5/5-6-1(c) as the statutory authority for this conditional disposition, but the court's sentencing order doesn't refer to that statute.

Regardless, the important point for our purposes is that because Markadonatos concedes that he was arrested on

probable cause, was charged with retail theft, and pleaded guilty as charged, he has no standing to claim that the booking fee is substantively unconstitutional because it applies to all arrested persons whether or not the arrest was lawful, a charge is filed, or a successful prosecution ensues. *See Sickles v. Campbell County, Ky.*, 501 F.3d 726, 732 (6th Cir. 2007) (holding that plaintiffs who pleaded guilty lack standing to challenge county's collection of jail costs as applied to those who are "arrested, booked and immediately released because of mistake"). Accordingly, the district court properly dismissed the substantive due-process claim.

That leaves the procedural due-process claim, which fails for the reasons Judge Stadtmueller has explained.

In his dissent Judge Hamilton maintains that the booking fee is in substance a criminal fine and must "await the outcome of a criminal prosecution." Dissent at 20. That's a claim about *the content* of the booking-fee ordinance—a substantive challenge to the Village's policy decision to apply the fee to every arrested person rather than just to those who are charged with and found guilty of a crime. It may be a good claim, but Markadonatos has no standing to make it because he was arrested on probable cause, charged with a crime, and pleaded guilty as charged.

To say that the booking fee is unconstitutional because it is collected from all arrested persons—even those who are arrested without probable cause, never charged, win a dismissal, or are acquitted—is to say that the fee ordinance is unconstitutional *in substance*. It is to say, as Judge Hamilton does in his dissent, that the booking fee is substantively

justifiable only as a fine—that is, only as part of the substantive punishment for a crime. He may be right about that. But we cannot entertain that substantive claim here because Markadonatos lacks standing to make it.

HAMILTON, *Circuit Judge*, dissenting: This should be a simple case. The village's "booking fee" ordinance is unconstitutional on its face. It takes property from all arrestees—the guilty and the innocent alike—without due process of law. The deprivation occurs at the time of arrest, immediately and finally. It occurs based on only the say-so and perhaps even the whim of one arresting officer. By no stretch of the imagination can that be due process of law. The fee is in substance a criminal fine, modest but a fine nonetheless, and it is imposed regardless of the validity of the arrest and regardless of whether there is any criminal prosecution or what its outcome might be.

The case has become unduly complicated, however. First, the majority fails to come to grips with the obvious procedural due process challenge by mistakenly splitting plaintiff's procedural claim into separate "procedural" and "substantive" due process claims and then analyzing each separately. Then, after confusing standing with the merits, the majority holds that plaintiff lacks standing to assert the "substantive" claim. The majority also seems to accept the village's effort to justify the fee as a "user fee" to pay for the "service" of being arrested. That turns the concept of a user fee upside down.

The obvious constitutional flaw here is easy to correct: make the fee payable upon conviction of a crime, as part of the court costs authorized by law after the full procedural protections of the criminal justice system. That is not a "substantive" due process theory, as my colleagues seem to think, but a simple correction to a facially unconstitutional law. We should reverse the district court's dismissal and remand

the case for further proceedings. I therefore respectfully dissent.

## I. The Procedural Due Process Violation

Before addressing the nuances of the doctrine and case law, I'll draw the broad outlines of the problem. We start with one of the most fundamental rights protected by the Constitution: the right to property. The government—federal, state, or local—may not deprive a person of property without due process of law. U.S. Const. Amdt. V and XIV. And this case is not about the more abstract forms of property under due process jurisprudence, such as government benefits, licenses, or expectations in keeping a job. This is about cash.

Under the village's booking fee ordinance, the deprivation of that property becomes inevitable the moment a village police officer decides to make an arrest. The booking fee *will be* assessed. It will be assessed regardless of whether the arrestee is ever prosecuted, regardless of the outcome of any prosecution, and even regardless of the validity of the arrest. The booking fee ordinance thus inflicts a final deprivation of property based on the decision of a single police officer. The ordinance allows no further room for dispute or review of any kind. The effect is that the booking fee ordinance imposes a criminal fine prematurely, before charges are even filed, let alone adjudicated.

That fundamental due process violation, which is inherent in the village's ordinance giving one police officer the power to inflict the property deprivation, cannot be explained away by using the *Mathews v. Eldridge* balancing test. See 424 U.S. 319 (1976). The majority applies the *Mathews v. Eldridge* test with

circular logic: because the fee is imposed on all arrestees, there is no need for procedure because there is essentially no risk of error. Majority at 7–11. That analysis errs because the majority fails to appreciate that the booking fee is in essence a criminal fine.

Correctly understood, the *Mathews v. Eldridge* framework requires that any booking fee await the outcome of a criminal prosecution. First, a person's private interest in his cash, his property, is protected by the Constitution whether the amount is large or small. Second, the risk of erroneous deprivation is in fact very substantial. The pivotal decision that imposes the deprivation is a lone police officer's decision to arrest. A lone police officer's decision is subject to judicial review even when she writes a mere speeding ticket, let alone imposes a criminal fine. Many people who are arrested are not even charged with crimes, and many charges result in either dismissal or acquittal, so that as many as 30 percent and perhaps nearly 50 percent of arrestees may pay the fee without any criminal conviction.[1]

---

[1] Since the district court dismissed the case at the pleading stage, we do not have a factual record with reliable data from Woodridge. The approximate range of 30% to nearly 50% is supported by available data from other jurisdictions. For example, in 2012 in California, there were more than 295,000 felony arrests, yet nearly 20 percent were not even prosecuted, and another 12 percent prevailed in court. Cal. Dep't of Justice, Crime in California 2012 at 50 (Table 38A, Dispositions of Adult Felony Arrests 2007–2012), available at http://oag.ca.gov/sites/all/files/pdfs/cjsc/publications/candd/cd12/cd12.pdf? (last visited Jan. 3, 2014). In DuPage County, Illinois, where Woodridge is located, the readily available statistics do not provide precise guidance. Yet in 2009 there were 4621

(continued...)

Third, the governmental interest in collecting such a fee generally may be significant, but if we ask whether the government has a legitimate interest in charging a fee to the many arrestees *who will not be convicted of a crime*, that interest just evaporates. Finally, there is no marginal cost for the government if it must wait for the outcome of the criminal charges. For anyone who might legitimately be required to pay the fee, those procedures will be used whether an arrest fee is imposed or not.

## II. The Defense Arguments

Perhaps the most difficult question about this case is whether the defense of this booking fee law is more similar to

---

[1] (...continued)

arrests for violent and property crimes, but only 3026 felony cases of any type were filed. See Illinois Criminal Justice Information Authority, Detailed Data Tables: DuPage County, available at www.icjia.org/public/sac/instantatlas/MainHTML/report_Counties_22.html (last visited Jan. 3,2014). These figures suggest a significant drop-off from arrest to prosecution. The drop-off from being prosecuted to being convicted is also large. In 2006 in the nation's 75 most populous counties, nearly a quarter of persons charged with felonies (24%) were not convicted. U.S. Department of Justice, Bureau of Justice Statistics Bulletin, Felony Defendants in Large Urban Counties, 2006, page 11 (May 2010). The conviction rate for misdemeanor arrests (and Markadonatos was charged with a Class A misdemeanor) may well be substantially lower. New York State data for 2012 show, for example, that about 56% of misdemeanor arrests result in convictions, as compared to about 69% of felony arrests. New York State Division of Criminal Justice Services, Adult Arrests Disposed, available at www.criminaljustice.ny.gov/crimnet/ojsa/dispos/nys.pdf (last visited Jan. 3, 2014). The California data cited above indicate that approximately one-third of those arrested on suspicion of a felony are not convicted of any crime.

the fiction of Lewis Carroll or of George Orwell. First, let's consider Lewis Carroll, who gave us the Queen of Hearts' philosophy of "sentence first, verdict afterwards." That describes the booking fee once we recognize it is in fact a fine for (suspected) criminal conduct. With that understanding, the due process problem should be self-evident.

### A. The "Substantive Due Process" Detour

The majority seeks to avoid this conclusion by framing the problem of imposing the fee on all arrestees as one of "substantive due process" and finding that plaintiff Markadonatos has no standing to raise such a claim. The majority thus fails to see that the deprivation occurs at the moment the fee is imposed upon booking, regardless of the later outcome of any later criminal prosecution. The government is not entitled to seize property summarily and then to justify the seizure by the result of a later trial. But see Concurrence at 16. That is a procedural due process violation as basic as "sentence first, verdict afterwards."

The majority's detour into substantive due process is mistaken as to both the nature of a substantive due process claim and the relationship between standing and the merits of a claim. (Unfortunately, plaintiff's counsel abetted these mistakes by even mentioning substantive due process.) As the Supreme Court has explained, its line of substantive due process cases interprets the Fifth and Fourteenth Amendments' Due Process Clauses "to include a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compel-

ling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02 (1993). When substantive due process is understood properly, it obviously does not prevent the government from imposing a fine or fee as part of the punishment for a crime.

The problem here is thus not the substantive result of imposing a criminal fine. When imposed through the procedures of the criminal justice system, that result poses no due process issue. The problem here is the procedures used, or not used. Judge Sykes' concurring opinion states correctly that my objection is to "the content" of the booking fee ordinance, but the objection is to the "content" that deprives all arrestees of their property without any procedural protection after the decision to arrest. That objection to "content" cannot be avoided by calling it a substantive due process argument. It's the lack of procedures that is the issue.

The majority's treatment of this supposed substantive due process theory is further confused by its odd blurring of the boundary between standing and the merits. See Majority at 5 (in considering standing: "we still question whether Woodridge's collection of the booking fee was an invasion of Mr. Markadonatos' legal rights, particularly with regard to his substantive due process claim"). As mistaken as the majority's treatment of this theory is, though, it does have the redeeming virtue of leaving the door open for a constitutional challenge by persons in a better position than Mr. Markadonatos to do so.

### B. The "User Fee" Rationale

The village offers an alternate view of the booking fee as a sort of "user fee" for the privilege of being arrested and

booked. This is the Orwellian version, where language is used to mean the opposite of reality. ("War is peace. Freedom is slavery. Ignorance is strength.") I am not aware of, and the village and the majority have not cited, any "user fee" imposed where the "user" has not acted *voluntarily* to use government services or facilities (a toll road, a state park, a hunting license, etc.). See generally *National Cable Television Ass'n v. United States*, 415 U.S. 336, 340 (1974) ("A fee, however, is incident to a voluntary act … ."); *Massachusetts v. United States*, 435 U.S. 444, 461–63 (1978) (holding that federal government could charge state a fee for use of state-owned aircraft in return for benefits of federal aviation programs); *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 651 F.3d 722, 728–29 (7th Cir. 2011) (en banc) (distinguishing between user fees and taxes for purposes of Tax Injunction Act).

During oral argument, the village tried to justify this user fee theory by explaining that a person arrested by mistake would still properly owe the fee because he would have *benefitted* from the "services" of being photographed and fingerprinted. That argument surely qualifies as Orwellian.[2]

### III. More on the Merits

A more detailed analysis of the relevant doctrine and case law must begin with a basic principle of due process. A person may not be punished for a crime until a neutral fact-finder

---

[2] "The Ministry of Peace concerns itself with war, the Ministry of Truth with lies, the Ministry of Love with torture and the Ministry of Plenty with starvation. These contradictions are not accidental, nor do they result from ordinary hypocrisy: they are deliberate exercises in doublethink." George Orwell, *1984*.

determines that the elements of the crime have been proven beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 361 (1970); *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993). That proof happens through the processes of our criminal justice system in the courts. It does not happen when a police officer makes an arrest. Even a suspect's confession to an officer on the spot is only evidence. It does not entitle the officer to impose judgment and punishment.

Yet punishment is exactly what happens when the village collects its booking fee. This is evident in the district court's reasoning. The district court wrote: "it is rational to share the costs of incarceration with those *who through their actions* necessitate that those costs be incurred." *Markadonatos v. Village of Woodridge*, 2012 WL 2128386, at *5 (N.D. Ill. June 11, 2012) (emphasis added). The majority endorses this logic as part of its substantive due process analysis, finding it rational that the village "takes money to cover the administrative costs of booking from the individuals *whose actions caused the cost to begin with*." Majority at 13 (emphasis added). By blaming the arrestee for the cost, the district court and the majority beg the question to be decided in the criminal justice process itself: is the arrestee guilty of a crime?

Mr. Markadonatos is not a particularly sympathetic plaintiff, of course. He does not claim that his arrest resulted from any mistake or was made without probable cause. He was arrested for shoplifting and admitted his guilt, though he wound up in a diversion program in which the ultimate adjudication was a finding of "not guilty." The majority defends its decision by asserting that his arrest was made with probable cause. I assume that's true, but it's not relevant to the

validity of the booking fee ordinance, and the majority does
not explain why it is. The plaintiff's individual circumstances
do not matter for his constitutional challenge to the ordinance
because his individual circumstances do not matter at all under
the ordinance. The booking fee is collected at the moment of
booking and is based on the say-so of just one police officer.
The arrestee is deprived of his property at that moment, with
no provision in the law for further process or even post-
deprivation remedy. In other words, *every* arrestee's right not
to be deprived of property without due process of law is
violated at the moment of booking, regardless of whether the
arrest was with or without probable cause, regardless of
whether the arrestee is actually prosecuted, and regardless of
the outcome of any prosecution. To justify the fee based on a
later plea or conviction is to endorse the Queen of Hearts'
justice, albeit on a modest scale.

At the risk of belaboring the obvious, probable cause for an
arrest is of course a complete defense to a federal constitutional
claim for wrongful seizure of the person and a state law claim
for false arrest. *E.g.*, *Mustafa v. City of Chicago*, 442 F.3d 544, 547
(7th Cir. 2006). To my knowledge, though, American courts
have never before even suggested that mere probable cause is
a sufficient basis for imposing a *criminal fine*—even a modest
one—without the further procedural protections of our
criminal justice system. Yet that is the effect of the majority's
decision.

Consider, for example, the problem posed by a person
arrested as a result of mistaken identity. Suppose a police
officer conducts a routine traffic stop, checks the driver's
identification, and learns there is an outstanding arrest warrant

for a person of the same name and a similar description. The officer may have probable cause to arrest the driver on the basis of the warrant, but surely all would agree that the driver is entitled to be released promptly once the mistaken identity is shown. If the officer makes the arrest in Woodridge, though, the driver must pay the booking fee and is, according to the village and the majority, not entitled to return of the money. Why on earth is that justifiable? The village's only response is its Orwellian claim that the arrested driver would have "benefitted" from the "services" of being photographed and fingerprinted. Please. And the majority endorses that result but provides no better explanation.

The village and the majority also defend the booking fee by suggesting that some sort of post-deprivation remedy is available and thus cures any due process problem. See Majority at 11, citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). That argument fails on both legal and factual grounds. The legal problems begin with the fact that the deprivation of property here is not random or unauthorized, as it was in both *Hudson* and the case it followed, *Parratt v. Taylor*, 451 U.S. 527 (1981), where a post-deprivation remedy was the only practical remedy for unauthorized wrongs. *Hudson* had to distinguish *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), which held that a post-deprivation remedy did not satisfy due process where the property deprivation was effected pursuant to an established government procedure. *Hudson*, 468 U.S. at 534. That's why the *Hudson* holding was framed this way: "We hold that an *unauthorized* intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth

Amendment if a meaningful postdeprivation remedy for the loss is available."*Id.* at 533 (emphasis added).

The majority's analysis simply overlooks the word "unauthorized" in *Hudson*, and the deprivation here was of course the intended and *authorized* result of the village's ordinance. Under well established law, the possibility of a later lawsuit as a remedy therefore does not cure the constitutional problem. See generally, *e.g.*, *Schepers v. Commissioner*, 691 F.3d 909, 916 (7th Cir. 2012) (making this point based on *Parratt* and *Logan*).[3]

The second legal problem is that the terms of the ordinance leave no room for a remedy. Once an officer decides to arrest a person, there is nothing more to decide. The majority points out correctly that the chances of an error in collecting the fee are, under the terms of the ordinance, minuscule. But that is only evidence of the constitutional problem—punishment before verdict—not a constitutional defense. See *Johnson v. City of Evanston*, 250 F.3d 560, 562 (7th Cir. 2001) (city's contention that plaintiff had no remedy for deprivation of use of his car "just [made] Johnson's constitutional point").

---

[3] Because the deprivation here is not a random or unauthorized violation, the village could not cure the constitutional defects by merely creating a procedure for some arrestees—such as those not convicted—to ask for a refund of the property taken from them. As the case law interpreting *Parratt* and *Logan* shows, if the government takes a person's property without due process, deliberately and pursuant to clear policy, the existence of a postdeprivation remedy is not a constitutional vaccine. That's evident from *Hudson*'s discussion of *Logan* and from *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1996), also cited by the majority, which recognized exactly the same distinction between authorized and unauthorized deprivations of property.

The factual problems with the supposed later remedies are laid bare when the village and the majority point out that some arrestees might have a civil claim for false arrest. That is true, but as noted above, a civil claim for false arrest is available only to people arrested without probable cause, not to many others never convicted of a crime. Second, even if the arrest was without probable cause and the damages for false arrest might include the booking fee, the amount of property taken is too modest for the remedy to be meaningful without the help of a class action. As we have said in related contexts, "only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). For a modest civil claim in the DuPage County courts, the filing fee alone is $150.[4]

So this booking fee ordinance imposes either punishment before verdict, like the Queen of Hearts' justice in *Alice in Wonderland*, or an Orwellian "user fee" on the unwilling arrestee who may well have done nothing wrong. Either way, it's an unconstitutional deprivation of property without due process of law.

---

[4] In two other odd passages, the majority suggests that an arrestee or at least an "ordinary citizen" who believes he should not have been arrested could complain to either the arresting officer or a judge in his criminal case, which should guard against an erroneous deprivation. Majority at 9 and 11. Yet as the majority acknowledges, the ordinance itself provides no such opportunity. It requires the fee to be imposed on all arrestees, without room for discretion. That's why the majority finds so little risk of error in its *Mathews v. Eldridge* balancing, so it's difficult to see how the possibility of an improvised and informal appeal for (unauthorized) mercy would help solve the constitutional problem here.

## IV. The Case Law

The majority defends its decision by citing several cases allowing jails and prisons to charge inmates for the cost of room and board. See Majority at 11. In the first of the cited cases, *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410 (3d Cir. 2000), the Third Circuit found no due process violation when a jail assessed a daily housing fee against an inmate in custody for state parole violations. *Tillman* does not support the majority's decision here because the plaintiff there had been convicted of a crime; he had already had ample procedural protections. See 221 F.3d at 414 (money confiscated when plaintiff was returned to prison). The majority finds a little more support from *Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 253–54 (4th Cir. 2005), which upheld a fee of one dollar per day for pretrial detainees. While I disagree with much of the reasoning in *Slade*, which did not recognize the "sentence first, verdict afterwards" problem, the Fourth Circuit at least took care to point out that a detainee who was acquitted of charges was entitled to a refund, *id*. at 247, 254 n.9, and the court also assumed a grievance procedure offered a remedy. Neither is true under the village's ordinance here.

The majority finds its strongest support in *Sickles v. Campbell County*, 501 F.3d 726 (6th Cir. 2007), which rejected a due process challenge to a county jail's policy of withholding cash from inmates to cover some costs of incarceration. The Sixth Circuit recognized that it would be a constitutional problem to deprive an inmate of his property if he were not convicted of a crime, but the court avoided those problems by finding that the two inmate plaintiffs could not raise those claims. One had been convicted and ordered to "pay the costs of proceeding

herein," and the other's claim would not be ripe unless and until he were acquitted and the county refused a claim for refund. See 501 F.3d at 732–33. While I disagree with the Sixth Circuit's reasoning in *Sickles* because it also failed to recognize the "sentence first, verdict afterwards" problem, the majority here seems to reach beyond even *Sickles* by finding that anyone arrested with mere probable cause can be charged a non-refundable booking fee.

While we are considering applicable case law, I commend the sound reasoning in *Roehl v. City of Naperville*, 857 F. Supp. 2d 707 (N.D. Ill. 2012), and *Allen v. Leis*, 213 F. Supp. 2d 819 (S.D. Ohio 2002). In *Roehl*, Magistrate Judge Schenkier correctly denied a motion to dismiss a due process challenge to a very similar fifty dollar booking fee that applied to all arrestees and provided no post-deprivation remedy. His careful opinion addressed and rejected all the arguments made by the village in this case. In *Allen*, Judge Spiegel correctly granted summary judgment, holding that a very similar thirty dollar booking fee violated due process even where there was a process for seeking a later refund, after acquittal or dismissal of criminal charges.

In a variation on the user fee theory, the village (but not the majority) also tries to justify its booking fee as merely an "administrative fee" that should be permitted under the reasoning of *Schilb v. Kuebel*, 404 U.S. 357 (1971), and *Payton v. County of Carroll*, 473 F.3d 845 (7th Cir. 2007), even for arrestees who are never convicted of a crime. A closer look at the more precise reasoning of those decisions shows, though, that the booking fee here denies due process of law. In *Schilb*, the Supreme Court upheld an Illinois law that allowed a county to

charge an administrative fee of one percent of the total bail amount for pretrial defendants using the court-administered bail-bond system. That fee applied to defendants who were ultimately acquitted. *Payton* upheld a similar administrative fee imposed on people posting bond.

There are two key differences between those cases and this one. First, the use of the reformed bail bond system in Illinois was voluntary in both cases. As the opinion in *Payton* made clear, there were other avenues for obtaining liberty before trial without using a bail bond (posting the full amount of security or release on personal recognizance), see 473 F.3d at 851, and the same was true in *Schilb*. See 404 U.S. at 367–68. There is nothing remotely voluntary about the village's booking fee. Second, as we also explained in *Payton*, the administrative fees for bail bonds in both *Schilb* and *Payton* were imposed in a court system with "a number of safeguards against detention of people who cannot afford this fee," and the opportunity to ask a court to reduce bail was an important procedural protection. 473 F.3d at 851–52. There are no similar protections in this case. The village cannot save this booking fee by labeling it an "administrative fee."

More closely on point is the Supreme Court's decision in *Giaccio v. Pennsylvania*, 382 U.S. 399 (1966), discussed in *Schilb*. In *Giaccio*, the Court struck down an old Pennsylvania statute that allowed a jury in a criminal case to assess court costs against a defendant whom it acquitted. The Court majority limited its holding to the narrow ground that the statute gave the jury no standards so that the imposition of costs on any acquitted defendant would be arbitrary. 382 U.S. at 403. Justices Stewart and Fortas both concurred separately on the

more fundamental ground that it violates the Due Process Clause to impose a penalty or costs on an acquitted defendant. *Id.* at 405. That's exactly right, and it's the problem with the village's booking fee here.

## V. Conclusion

Perhaps a reader might wonder whether this case deserves a dissent. It involves, after all, only thirty dollars and one small municipality in northern Illinois. While thirty dollars may not seem like much to the governing class in our society, including lawyers and judges, it is for too many people a vital amount of cash. Thirty dollars is roughly the average allotment under the federal Food Stamp program (now known as the Supplemental Nutrition Assistance Program) to help feed an adult for a week. It's also the federal minimum wage for more than half a day of work. The amount at stake may affect the timing and extent of process that is due, such as whether a pre-deprivation hearing is needed. But property is property, and the government cannot take even one dollar without due process of law. This ordinance offers none.

The issue here also reaches far beyond the Village of Woodridge. In this circuit alone, district courts have addressed due process challenges to similar local booking fees in *Roehl v. City of Naperville*, 857 F. Supp. 2d 707 (N.D. Ill. 2012) (denying motion to dismiss due process challenge); *Bailiff v. Village of Downers Grove*, 2011 WL 6318953 (N.D. Ill. Dec. 16, 2011) (granting motion to certify plaintiff class); *Silvas v. Dominguez*, 2006 WL 1128233 (N.D. Ind. Apr. 24, 2006) (granting judgment for defense after trial); and *Sanchez v. Becher*, 2003 WL 1563941 (S.D. Ind. Jan. 31, 2003) (granting motion to certify plaintiff

class). The governments in *Roehl*, *Bailiff*, and *Sanchez* settled and modified their practices, but the majority's decision will, if it stands, invite local governments throughout the circuit and perhaps elsewhere to impose such booking fees. For governments under fiscal pressure, the temptation may be strong to raise money with such fees on a group unlikely to have political clout.

I hope, though, that the Village of Woodridge and other local governments considering such fees see the clear warning signs from even the majority. Both the majority and concurring opinions seem to leave the door open to suits on behalf of at least the many arrestees who are not convicted of a crime or those who are arrested without probable cause. See Majority at 7 & n.2; Concurrence at 16–17. Neither opinion attempts to justify imposing arrest fees on such people.

Properly understood, the village's booking fee violates the due process rights of all arrestees, but the violation is most obvious for people who are never convicted or even prosecuted. As noted above, that is a sizable proportion of all arrestees. Depending on the geographic jurisdiction and the charge, it may range from perhaps 30 percent up to nearly 50 percent of arrestees. That is a very high error rate for purposes of *Mathews v. Eldridge* and it's a lot of unjustified criminal fines imposed without due process of law. Future suits on behalf of such persons, with attorney fee awards under 42 U.S.C. § 1988, could quickly become much more expensive for local governments than any short-term financial gain the fees might provide.

For all these reasons, I would reverse the judgment of the district court and remand the case for further proceedings.