In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 17-3416

ISAAC OWENS,

*Plaintiff-Appellant,*

*v.*

AUXILIUM PHARMACEUTICALS, INC.,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 5180 — **Matthew F. Kennelly**, *Judge.*

———————————

ARGUED MAY 15, 2018 — DECIDED JULY 19, 2018

———————————

Before BAUER, KANNE, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge*. Isaac Owens used Testim, a topical gel containing 1% testosterone, sporadically for two years. During this time, he developed deep vein thrombosis. He sued Testim's manufacturer, alleging that the drug caused the condition. To show causation—a necessary element of all of his claims—Owens planned to rely on the testimony of Dr. Ji-had Abbas. The district court excluded Dr. Abbas's testimony and, as a result, granted summary judgment in favor of the

drug manufacturer. Owens appeals the district court's decision to exclude his expert's testimony and grant summary judgment. We affirm.

## I. BACKGROUND

Owens developed deep vein thrombosis ("DVT") while using Testim, a drug manufactured by the defendant–Auxilium Pharmaceuticals, LLC. He and other plaintiffs in a multi-district litigation allege that they suffered injuries because they took Testim and other testosterone-replacement-therapy drugs. Owens's case was selected for a bellwether trial in the multidistrict litigation.

Owens began using Testim in July 2011 when his doctor diagnosed him with hypogonadism. Between July 2011 and July 2013, Owens used the drug sporadically. He refilled his prescription only three times, so he did not have enough of the drug to take a full daily dose during the time period. When Owens did use Testim, he did so incorrectly. Although the medication guide directs users to apply a full tube of Testim to the shoulders and arms, Owens testified that he would apply part of a tube to his thighs and stomach.

On July 12, 2013, Owens was admitted to a hospital's emergency department for pain in his left leg. After an ultrasound revealed blood clots in his leg, he was diagnosed with DVT. Owens was treated with blood thinners and released from the hospital the following day.

In his suit, Owens alleges that Testim caused the DVT and asserts claims for strict liability, negligence, fraud, and negligent misrepresentation under Kentucky law. Each of these claims requires expert testimony to establish causation. *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated*

*Pretrial Proceedings*, No. 14 C 1748, 2017 WL 4772759, at *6 (N.D. Ill. Oct. 23, 2017) (citing *Adams v. Cooper Indus., Inc.*, No. CIV.A. 03-476-JBC, 2012 WL 2339741, at *1 (E.D. Ky. June 19, 2012)). For that, Owens planned to rely on the testimony of Dr. Abbas. But Dr. Abbas's testimony was problematic. Although Dr. Abbas opined that Testim had caused Owens's DVT, he did so on the assumption that Owens was applying the prescribed dose of the gel in the proper manner. Moreover, when asked during his deposition about hypothetical cases that resembled Owens's use of Testim, Dr. Abbas explained that he had no opinion.

Auxilium moved to exclude Dr. Abbas's testimony because it was not tied to the facts of the case. It also moved for summary judgment because, without the expert testimony, Owens could not show that Testim caused his injury. The district court agreed and granted summary judgment to Auxilium. Owens appealed.

## II. ANALYSIS

This appeal centers on the district court's exclusion of Dr. Abbas's testimony, which Owens argues was improper. Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) govern this decision. In relevant part, they require that the expert's testimony "assist the trier of fact." *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004) (quoting *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 788 (7th Cir. 2000)). To do so, the testimony must "fit the issue to which the expert is testifying and be tied to the facts of the case." *Hartman v. EBSCO Indus., Inc.*, 758 F.3d 810, 819 (7th Cir. 2014) (quoting *Deimer v. Cincinnati Sub-Zero Prods., Inc.*, 58 F.3d 341, 345 (7th Cir. 1995)). When there

is no question that the district court properly followed *Daubert*'s framework—as is the case here—we consider whether the district court abused its discretion by excluding the testimony. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 420 (7th Cir. 2005).

Here, the district court properly exercised its discretion by concluding that Dr. Abbas's testimony did not fit the facts of Owens's case. Dr. Abbas testified that Testim caused Owens's DVT on the assumption that Owens used Testim as prescribed. This in fact was not the case. Owens instead testified that he used far less than the prescribed dose and that he did not apply the medication as directed. When presented hypotheticals that more closely resembled the facts of Owens's case, Dr. Abbas conceded that he could not offer an opinion. Because Dr. Abbas's testimony did not fit the facts of the case, it was not likely to "assist the trier of fact to understand the evidence or to determine a fact in issue." *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007).

Of course, some questions regarding an expert's use of faulty assumptions or data should be left to a jury. *See, e.g.*, *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765–67 (7th Cir. 2013) (quality of testimony and soundness of factual basis are questions for jury; debatable input to expert's model was an "arguable limitation" of his opinion, not an error rendering it irrelevant). But whether an expert's approach lines up with the basic facts of the case goes to the relevance and admissibility of the testimony itself. Gatekeeping of this sort is properly left to the court. Dr. Abbas's lack of familiarity with the case did not simply affect the certainty of his conclusion. It meant that he was giving an opinion about a hypothetical high-risk patient using Testim as directed, not Owens who we

know did not use it as directed. The district court therefore did not abuse its discretion by excluding the testimony. *Hartman*, 758 F.3d at 819; *Deimer*, 58 F.3d at 345; *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 616 (7th Cir. 1993).

Owens takes issue with this analysis for two reasons. Neither is persuasive. First, he argues that the district court should not have excluded Dr. Abbas's testimony because—in Owens's view—deposition testimony suggests that he used full doses of Testim in the days leading up to his DVT. By Owens's estimation, this inference is justified because:

- the prescribing doctor noted that Owens had not been using the full dose when filling the Testim prescription in July 2013;
- the doctor testified that he would have instructed a patient using Testim incorrectly on how to use it correctly; and
- Owens testified that he trusted the doctor and generally followed his advice.

This is hardly a set of facts that would lead us to conclude that the district court abused its discretion. In fact, Owens put the matter to rest during his deposition when he explained that he continued to apply less than half a full dose per day after his July appointment.

Second, Owens argues that he at least used a "therapeutic dose" and contends that Dr. Abbas's testimony was not based on the assumption that he used a full dose, but rather a "therapeutic dose." But Owens raises this argument for the first time on appeal, so we do not consider it. *Hale v. Chu*, 614 F.3d 741, 744 (7th Cir. 2010) ("A party waives the right to argue an

issue on appeal if he fails to raise that issue before the trial court").

### III. CONCLUSION

The district court properly applied the *Daubert* framework when excluding Dr. Abbas's testimony. It did not abuse its discretion by concluding that the testimony did not fit the facts of Owens's case. It also did not abuse its discretion by failing to consider an argument Owens never presented. Without expert testimony on causation, Owens's claims necessarily fail. We therefore AFFIRM the judgment of the district court.