NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 19, 2019[*]
Decided February 19, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 18-2363

| | |
|---|---|
| JAMES A. LEWIS,<br>    *Plaintiff-Appellant*,<br><br>*v.*<br><br>CHAD HENNEMAN, et al.,<br>    *Defendants-Appellees*. | Appeal from the United States District<br>Court for the Western District<br>of Wisconsin.<br><br>No. 16-cv-733-jdp<br><br>James D. Peterson,<br>*Chief Judge*. |

**O R D E R**

James Lewis, an inmate at Wisconsin's Secure Program Facility, sued prison officials under 42 U.S.C. § 1983 for violating the First and Fourteenth Amendments by disciplining him for prison-workplace misconduct in retaliation for activity protected by the First Amendment. The district court entered summary judgment. No reasonable juror could find for Lewis on his claims, so we affirm.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. CIV. P. 34(a)(2)(C).

We recount the facts in the light most favorable to Lewis, the opponent of summary judgment. *See Giles v. Tobeck*, 895 F.3d 510, 512 (7th Cir. 2018). In December 2014, Lewis began work in the prison's kitchen. For a brief time, his supervisor, Lorie Iverson, was satisfied with his work. She rated him "above average," promoted him, and twice increased his pay. Also, a manager, Chad Henneman, often referred inmates to Lewis for workplace guidance.

Workplace harmony did not last long. About six months into the job, in May 2015, Lewis cursed at Henneman. Lewis says that he did so because, while he was bending over, Henneman made a comment that Lewis thought was a sexual advance. After that incident, Lewis attests, Henneman started "harassing" him by assigning him extra work and criticizing Lewis's work. The first write-up from Henneman was a conduct report in July 2015, citing Lewis for disruptive conduct. Lewis was found guilty. Lewis responded with a grievance against Henneman, which the prison rejected. The next conflict occurred later that month, when Henneman scolded Lewis, erroneously, for another inmate's mistake. Lewis filed a grievance about this incident, but it too was denied. Next, Henneman prevented Lewis from leaving work to go to the law library after another officer granted Lewis permission to do so. Lewis filed a grievance about this incident, but the prison dismissed it, too.

In the fall, Lewis formally complained about the perceived sexual advance from Henneman that, a few months earlier, had prompted Lewis to curse at Henneman. This triggered an internal investigation under the Prison Rape Elimination Act, 34 U.S.C. § 30301–09. Lewis did not work (because the prison placed him on leave) during the investigation. The prison determined that "the investigation produced insufficient evidence to make a final determination as to whether or not the event occurred."

When Lewis returned to work in January 2016, the conflicts that started after the cursing incident continued. He sought a promotion, but Iverson denied it, citing Lewis's recent absence. Iverson told Lewis, though, that he had been "a good worker" and that "he worked hard." That assessment began to change the next month, when Iverson reprimanded Lewis for joking that he received a work assignment because of his race, then sent Lewis back to his cell early after he swore about the reprimand. Henneman wrote a conduct report against Lewis about this incident, and Lewis was found guilty. Lewis appealed, arguing that Henneman was retaliating for the sexual-misconduct investigation, but the prison affirmed. Iverson ultimately rated Lewis's work in the first part of 2016 as "unsatisfactory," and Lewis responded with two more grievances that were both denied.

The tension reached a breaking point on June 23. Henneman ordered Lewis to carry items rather than use a cart, even though Lewis had recently injured his back. After they discussed matters, Henneman ordered Lewis back to his cell and wrote a conduct report, accusing Lewis of profanity. Lewis contested the allegations, arguing that Henneman had been harassing him because of the sexual-misconduct investigation. Lewis was found guilty, and the prison affirmed his appeal. Iverson again rated Lewis's work as "unsatisfactory" and this time fired him. Lewis contested the evaluation, but his grievances were rejected.

Lewis responded with this suit, accusing Henneman, Iverson, and another kitchen supervisor of violating the First Amendment and his equal-protection rights by harassing him, disciplining him, and firing him for his past grievances. Lewis asked for recruited counsel, arguing that he had difficulty conducting discovery. In an order granting Lewis's motion to compel to discovery, the judge denied the request for counsel, reasoning that Lewis was "capable of navigating the discovery process ably." The district judge later entered summary judgment for the defendants. On the First Amendment claim, the judge recognized that "Henneman in particular may have treated Lewis poorly," but ruled that Lewis lacked evidence that Lewis's grievances motivated the defendants' actions against him. Lewis's equal-protection claims also failed, the judge explained, because Lewis could not bring claims for allegedly discriminatory acts taken in the scope of Lewis's employment. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008).

On appeal, Lewis first contends that he presented enough evidence to survive summary judgment on his First Amendment claim against Henneman. The parties treat this claim as turning on whether the record contains evidence reasonably suggesting that Lewis's grievances motivated Henneman's actions. *See Walker v. Groot*, 867 F.3d 799, 803 (7th Cir. 2017). *But see Herron v. Meyer*, 820 F.3d 860, 863–64 (7th Cir. 2016) (questioning whether the First Amendment protects a prisoner's personal, workplace grievances). So we do as well, and we conclude that a rational jury could not conclude that Henneman punished Lewis because of his grievances. Lewis's own testimony negates a causal link between his grievances and Henneman's actions. He swears that Henneman started harassing him because he cursed at Henneman in May 2015, after Henneman made a comment that Lewis perceived to be sexual in nature. Under Lewis's view of the record, then, his cursing (which no one contends is protected speech), rather than the grievances that came later, sparked the animosity that prompted later adverse actions. Because unprotected speech caused the adverse action, the First Amendment was not violated.

Lewis also lacks evidence that the two other defendants, Iverson and another kitchen supervisor, were motivated to take adverse action against him because of his protected speech. *See Walker*, 867 F.3d at 803. He observes that his two "unsatisfactory" evaluations, to which they contributed, followed on the heels of the conduct reports that Henneman wrote; therefore, he argues, they joined Henneman's retaliatory harassment by punishing him for his interactions with Henneman. But if, as we have already said, Henneman's motivation was not unlawfully retaliatory, then by joining that motivation, the other defendants did not violate the First Amendment. Moreover, the workplace evaluations show merely that the defendants believed the allegations in Henneman's conduct reports, not that they knew that some prohibited animus motivated the reports.

The rulings on the equal-protection claim also were correct. Lewis invoked the "class of one" theory of equal protection, which prohibits the government from treating a person arbitrarily, and argues that the defendants disciplined him for workplace misconduct that they overlooked in other inmates. But that theory does not apply to the employment context generally, let alone a prison's workplace. *See Engquist*, 553 U.S. at 609; *Abcarian v. McDonald*, 617 F.3d 931, 938–39 (7th Cir. 2010). In addition, no federal case law has clearly established that a prison conduct report can form the basis for a class-of-one claim, so qualified immunity protects the defendants as well. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 502–04 (2019); *Thayer v. Chiczewski*, 705 F.3d 237, 254–55 (7th Cir. 2012) (quoting *Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887, 889, 913, 915 (7th Cir. 2012) (en banc)).

Lewis's other arguments can be quickly dispatched. Lewis first asserts that the district judge abused his discretion by failing to recruit counsel. But the district judge reasonably applied the correct legal standard, *see Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc). He permissibly concluded that, based on Lewis's ability to successfully navigate the discovery process, including successfully litigating a motion to compel, he could adequately litigate his case. Second, Lewis requests that we grant him $12.50, representing his costs in litigating his motion to compel. But Lewis did not submit his costs to the district court, and we will not consider them for the first time on appeal. *See Owens v. Auxilium Pharma., Inc.*, 895 F.3d 971, 974 (7th Cir. 2018). The district court, therefore, did not abuse its discretion in rejecting Lewis's request for those costs. *See James v. Hyatt Regency Chi.*, 707 F.3d 775, 784–85 (7th Cir. 2013).

We thus AFFIRM the judgment.