In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3511

WILLIAM B. SHIPLEY, NINA MARIE,
and KATHERINE WUTHRICH,

*Plaintiffs-Appellants*,

*v.*

CHICAGO BOARD OF ELECTION COMMISSIONERS
and JAMES M. SCANLON,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16-cv-07424 — **John Robert Blakey**, *Judge*.

ARGUED JANUARY 7, 2020 — DECIDED JANUARY 27, 2020

Before BRENNAN, SCUDDER, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Claims of election fraud are not new in Illinois. Plaintiffs William B. Shipley and Katherine Wuthrich were credentialed election monitors in Chicago during the 2016 Illinois primary election and Plaintiff Nina Marie voted in the election. They allege that during the statutorily mandated post-election audit of electronic voting machines,

they witnessed rampant fraud and irregularities by the Chicago Board of Election Commissioners' (the "Board") employees conducting the audit. Plaintiffs filed suit in federal court under 42 U.S.C. § 1983 alleging this post-election audit fraud violated their right to vote.

The problem with Plaintiffs' allegations, however, is that Illinois law expressly precludes the findings of the post-election audit from changing or altering the election results. In other words, no matter how improper the Board employees' conduct was during the audit, it could not have affected Plaintiffs' right to vote. For this reason, the district court dismissed the complaint for failure to state a claim. And for the same reason, we affirm the district court's judgment.

## I. Background

The Illinois Election Code, 10 Ill. Comp. Stat. 5/1-1 *et seq.*, provides for the use of Direct Recording Electronic Voting Systems (DREVS), or, more simply, electronic voting, in election precincts during regular and early voting. 10 Ill. Comp. Stat. 5/24C-1. The electronic voting equipment must be capable of "instantaneously recording such votes, storing such votes, producing a *permanent paper record* and tabulating such votes at the precinct or at one or more counting stations." *Id.* (emphasis added). The permanent paper record is, as its name suggests, a paper upon which the machine prints an image of the votes cast on each ballot electronically recorded on that machine. *Id.* § 24C-2. The permanent paper records are then preserved in the same manner as paper ballots and "shall be available as an official record for any recount, redundant count, or verification or retabulation of the vote count." *Id.* § 24C-12. After the polls close, the DREVS equipment tabulates the total votes and produces an "In-Precinct Totals

Report," or a precinct return. *Id*. The precinct return includes "the number of ballots cast and votes cast for each candidate and public question and shall constitute the official return of each precinct." *Id*. § 24C-15.

After an election, the Board randomly tests a small percentage—five percent to be exact—of the electronic voting equipment in service during that election. Section 24C-15 of the Code, which is at the heart of this appeal, provides the procedure for the post-election audit of the electronic voting equipment.

## A. The five percent audit

Section 24C-15 covers three topics, as indicated by its title: "Official Return of Precinct," "Check of Totals," and "Audit." The section does not contain subdivisions, internal headings, or otherwise obviously subdivide the topics, but a read of the section quickly reveals its structure. The first paragraph deals with the Official Return of Precinct and the Check of Totals, which are irrelevant for purposes of this appeal.

The second paragraph in section 24C-15 outlines the five percent audit procedure that we are concerned with here. "Prior to the proclamation, the election authority shall test the voting devices and equipment in 5% of the precincts within the election jurisdiction, as well as 5% of the voting devices used in early voting." 10 Ill. Comp. Stat. 5/24C-15. The State Board of Elections, not the local election authority, randomly selects, based on a mathematical formula, the precincts and voting devices to be tested. The local election authority though—here, the Board—conducts the five percent audit.

The procedure for auditing, or testing, the electronic voting equipment is simple. The Board manually counts the

votes marked on the permanent paper record and then compares those hand-tallied vote totals to the DREVS-generated results. *See* 10 Ill. Comp. Stat. 5/24C-15. If there is a discrepancy, "the cause shall be determined and corrected, and an errorless count shall be made prior to the official canvass and proclamation of election results." *Id*. If, however, "an errorless count cannot be conducted" and there continues to be a difference between the hand tally of the permanent paper record and the electronically generated totals, the Board "shall immediately prepare and forward to the appropriate canvassing board a written report explaining the results of the test and any errors encountered and the report shall be made available for public inspection." *Id*. Finally, section 24C-15 concludes by expressly providing that the "results of this post-election test shall be treated in the same manner and have the same effect as the results of the discovery procedures set forth in Section 22-9.1 of this Code." *Id*. The incorporated section 22-9.1 is discussed in greater detail below, but for now it is sufficient to say that the discovery procedures cannot be used to affect election results.

## B. Plaintiffs' allegations

After the March 15, 2016 primary election in Illinois, the Board conducted the statutorily mandated five percent audit from March 23, 2016, through March 29, 2016, at a storage facility in Chicago. Plaintiffs Shipley and Wuthrich were credentialed election monitors and attended one or more of these audits. According to Plaintiffs, they observed troublesome behavior.

The Board performed the five percent audits by having one Board employee read aloud the individual votes from the permanent paper record while another employee would hand

record the votes on a tally sheet. The machine-generated final vote count was allegedly preprinted at the top of the tally sheet in bold—essentially, according to Plaintiffs, giving away the answers to the test. The Board employees, Plaintiffs allege, also used pencil to make the tally marks, permitting the employees to erase tallies at the end so that their test count would match the preprinted final count. Or, similarly, employees would add tallies at the end to make up any difference or just stop counting once the test count reached the "target" vote count. Plaintiffs also contend that Board employees actively attempted to obscure Plaintiffs' view of the tally sheets. This improper conduct was "widespread and pervasive" throughout the observed audits.

Troubled by their observations, Plaintiffs attended an April 5, 2016 Board meeting for consideration of returns and proclamation of the results of the primary election. They also submitted their concerns to the Board in writing in advance of the public meeting. But Plaintiffs allege that even though the meeting was supposed to be open for public comment, the Board closed public comment and did not allow Plaintiffs to speak. The Board certified the returns and adjourned the proclamation meeting in "less than two minutes."

## C. The district court proceedings

Plaintiffs[1] filed a three-count complaint in federal court. Count I, brought under 42 U.S.C. § 1983, alleged a violation of the right to vote. Count II, also brought under § 1983, alleged a violation of the rights of freedom of association and to petition the government. In Count III, Plaintiffs sought

---

[1] Rebecca A. Kerlin, Michelle Gale, and Claire Tobin were also named plaintiffs in the district court but withdrew from the case on appeal.

declaratory and injunctive relief, requesting that the court permanently enjoin the Board from further violating the Illinois Election Code.

The Board moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The district court initially granted in part and denied in part the motion. Specifically, the court dismissed Count II but found that Counts I and III sufficiently stated a claim to survive dismissal. The Board moved for reconsideration, suggesting that the district court misapprehended its argument regarding the right to vote claim due to "a lack of clarity" in the Board's initial motion to dismiss. The Board more clearly articulated its argument that regardless of whether the post-election audit was properly conducted, the audit cannot—by statute—be used to amend or change any vote and thus the alleged improprieties could not have affected anyone's right to vote. Plaintiffs then amended their complaint in response to the motion to reconsider, adding some factual allegations in support of Count I and repleaded the dismissed Count II verbatim "to preserve the record for appellate purposes, if necessary." The Board again moved to dismiss.

Upon reconsideration, and in light of the new motion to dismiss, the district court agreed with the Board. "Simply put, the plain text of section 22-9.1 unambiguously says that the discovery procedure's results, and thus the 5% test's results, cannot change *election results*. Under Illinois law, the only outcome of an error in the 5% test count is a public[ly] available written report." The court therefore dismissed Count I because "[n]o matter how flagrantly [the Board] might have doctored the numbers during its 5% test, that test's results could not possibly have affected the election results under

Illinois law." As to Count II, the district court incorporated its previous memorandum and opinion dismissing the count, which found that Plaintiffs' allegations did not identify with whom Plaintiffs were prevented from associating with or any interference with "petitioning" the government. With the dismissal of Counts I and II, the court dismissed Count III because there was no longer a claim of a deprivation of any federal constitutional right to support federal jurisdiction.

The court dismissed the complaint with prejudice because Plaintiffs did not request leave to replead and, in any event, any attempt to replead would be futile.[2]

## II. Discussion

We review a district court's grant of a motion to dismiss for failure to state a claim de novo. *Chicago Studio Rental, Inc. v. Illinois Dep't of Commerce*, 940 F.3d 971, 977 (7th Cir. 2019). We accept well-pleaded facts as true and draw all reasonable inferences in the plaintiffs' favor. *Id*. To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs allege the deprivation of three constitutional rights: the right to vote, freedom of association, and the right to petition the government.[3] The focus of Plaintiffs' lawsuit,

---

[2] Plaintiffs do not challenge that the dismissal was with prejudice or argue that they should be given another opportunity to replead.

[3] Plaintiffs' opening brief makes a cursory, two-sentence reference to an equal protection claim. To the extent Plaintiffs assert an equal

and their briefing, is the right to vote claim, but we will address each constitutional claim in turn, along with the equitable relief claim.

**A. Right to vote**

It is undeniable that the right to vote is a fundamental right guaranteed by the Constitution. *See, e.g.*, *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). The right to vote is not just the right to put a ballot in a box but also the right to have one's vote counted. *United States v. Mosley*, 238 U.S. 383, 386 (1915). "The right to vote can neither be denied outright, nor destroyed by alteration of ballots, nor diluted by ballot-box stuffing." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964) (internal citations omitted). Plaintiffs cannot state a claim for a violation of the right to vote, though, because the five percent audit cannot alter or discard any vote cast. The Illinois Election Code compels this conclusion.

Because we are interpreting an Illinois statute, we apply Illinois's principles of statutory construction. *See Doe v. Archdiocese of Milwaukee*, 772 F.3d 437, 440–41 (7th Cir. 2014) ("When interpreting a state statute, we apply the same principles of statutory construction that a state court would apply."). In Illinois, the "primary objective in construing a statute is to ascertain and give effect to the intent of the legislature." *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 939 N.E.2d 487, 490 (Ill. 2010). "The plain language of a statute is the most reliable indication of legislative intent." *Id*. "[W]hen the language of the statute is clear, it must be applied

---

protection claim on appeal, they have waived the right to argue that claim because they failed to present it to the district court. *See Hale v. Victor Chu*, 614 F.3d 741, 744 (7th Cir. 2010).

as written without resort to aids or tools of interpretation." *DeLuna v. Burciaga*, 857 N.E.2d 229, 236 (Ill. 2006). The analysis here starts and stops with the plain language of section 24C-15 and, as incorporated therein, section 22-9.1.

Section 24C-15 provides that if, during the five percent audit of the electronic voting equipment,

> an errorless count cannot be conducted and there continues to be difference in vote results between the certificate of results produced by the Direct Recording Electronic Voting System and the count of the permanent paper records or if an error was detected and corrected, the election authority shall immediately prepare and forward to the appropriate canvassing board a written report explaining the results of the test and any errors encountered and the report shall be made available for public inspection.

10 Ill. Comp. Stat. 5/24C-15. In simpler terms, the statute expressly contemplates the possibility of discrepancy in the final test count and offers only one option: a written report. Nothing in section 24C-15 permits the Board to use the results of the five percent audit to in any way change, correct, or even question the official precinct returns, the certificate of results, or the proclamation of election results.

If this plain reading of section 24C-15 was not clear enough on its face, the provision concludes by stating that the "results of this post-election test shall be treated in the same manner and have the same effect as the results of the

discovery procedures set forth in Section 22-9.1 of this Code."
*Id*. So we turn to section 22-9.1.

Section 22-9.1 governs the ability of a candidate to petition
for discovery within five days after the last day for proclama-
tion of the results of an election. A petition for discovery in-
cludes a request to test a portion of the automatic tabulating
equipment. But, critical to the effect of the five percent audit,
the

> results of the examination and count shall not
> be certified, used to amend or change the ab-
> stracts of the votes previously completed, used
> to deny the successful candidate for the same of-
> fice his certificate of nomination or election, nor
> used to change the previously declared result of
> the vote on a question of public policy.

10 Ill. Comp. Stat. 5/22-9.1. The incorporation by reference of
section 22-9.1 forecloses any argument that Plaintiffs may
have had that section 24C-15 leaves open the possibility to
challenge the official election results. Taken together, section
22-9.1 reaffirms the conclusion that section 24C-15's five per-
cent audit procedure cannot affect votes.

Plaintiffs devote most of their time to arguing that the dis-
trict court ignored their allegations and demanded a higher
degree of factual pleading than the federal rules require.
Plaintiffs miss the forest for the trees. The issue is not one of
facts, but one of law. No matter how factually detailed, egre-
gious, or willful the misconduct alleged, the five percent audit
cannot affect the election results under Illinois law. Therefore,
Plaintiffs cannot state a plausible claim that the Board de-
prived them of their right to vote.

We note, parenthetically, that this does not mean that all allegations of misconduct during a five percent audit are without recourse entirely. Indeed, such allegations may state a claim for violation of the Illinois Election Code. But that is a state law claim for a violation of state law, not a federal claim for a violation of constitutional rights. "A violation of state law does not state a claim under § 1983," and, more specifically, "a deliberate violation of state election laws by state election officials does not transgress against the Constitution." *Kasper v. Bd. of Election Comm'rs of the City of Chicago*, 814 F.2d 332, 342 (7th Cir. 1987) (citing *Snowden v. Hughes*, 321 U.S. 1, 11 (1944)); *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975) ("It is not every election irregularity, however, which will give rise to a constitutional claim and an action under section 1983. Mere violation of a state statute by an election official, for example, will not."). Plaintiffs may have other avenues available to raise their complaints, but federal court is not one of them.

## B. Waiver of remaining constitutional claims

Plaintiffs also claim that the Board violated their constitutional rights to freely associate and to petition the government. But on appeal, Plaintiffs offer only a few cursory sentences in support of their freedom of association and right to petition the government claims, buried in the middle of other arguments, and without any adequate explanation at all that would aid our review. "We will not fill this void by crafting arguments and performing the necessary legal research." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 842 (7th Cir. 2010); *see also* Fed. R. App. P. 28(a)(8)(A) (requiring appellant's argument to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of

the record on which the appellant relies"). Arguments that are underdeveloped, cursory, and lack supporting authority are waived. *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 419 n.2 (7th Cir. 2019) ("As briefed, the argument is terse, free of legal citation, and vague. It is therefore waived."); *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("Moreover, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." (quotations omitted)). Plaintiffs' arguments on appeal are woefully undeveloped and therefore waived.

Even if we were to forgive the waiver, Plaintiffs fare no better on the merits. Plaintiffs have failed to state a plausible claim that the Board violated their right to freely associate or their right to petition the government. We briefly address each constitutional claim.

### 1. Freedom of association

The Constitution protects two forms of free association. "The first, freedom of expressive association, arises from the First Amendment and ensures the right to associate for the purpose of engaging in activities protected by the First Amendment." *Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18 (1984)). "The second, freedom of intimate association, protects the right 'to enter into and maintain certain intimate human relationships.'" *Id*. (quoting *Roberts*, 468 U.S. at 617). We assume that Plaintiffs assert the first variety. The freedom of expressive association accords "protection to collective effort on behalf of shared goals" to help "in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority." *Roberts*, 468 U.S. at 622.

Certainly, Plaintiffs allege a collective effort to monitor elections on behalf of their shared goal to promote election integrity. But Plaintiffs do not allege how they were prevented from associating or with whom they were prevented from associating. Without more, Plaintiffs have failed to state a claim that the Board violated their right to freedom of association.

### 2. Right to petition the government

"The right to petition the government for redress of grievances is found in the First Amendment to the Constitution." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1006 (7th Cir. 2000). "The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives …." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011). Although "various levels of public participation in various kinds of policy decisions may be" sensible, the Supreme Court "has never held, and nothing in the Constitution suggests it should hold, that government must provide for such participation." *Minnesota State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984). "[T]he rights to speak, associate, and petition [do not] require government policymakers to listen or respond to individuals' communications on public issues." *Id.* "So while the government may not interfere with the right to petition, it need not grant the petition, no matter how meritorious it is." *Hilton*, 209 F.3d at 1007 (internal citations omitted).

Plaintiffs' primary, if not only, allegation regarding the right to petition the government is that they were prevented from publicly commenting at the April 5, 2016 proclamation meeting before the Board certified the precinct returns. But elsewhere in the amended complaint, Plaintiffs allege that they voiced their objections to the Board shortly after the five

percent audit and before the meeting, and also that they submitted their observations in writing in advance of the public meeting. "A petition conveys the special concerns of its author to the government and, in its usual form, requests action by the government to address those concerns." *Borough of Duryea*, 564 U.S. at 388–89. Thus, Plaintiffs' own allegations doom their claim. Plaintiffs were in fact able to petition the Board for redress of their grievances. That the Board did not take any action, or at least to the satisfaction of Plaintiffs, is of no moment. It seems, as best we can discern, that Plaintiffs' only complaint is that they were not able to petition the Board at their desired time and place, not that they were prohibited from petitioning the government. And without any help from Plaintiffs on this score, we decline to read any further into their claim.

## C. Equitable relief

Finally, Plaintiffs sought a declaration regarding the parties' legal rights and liabilities with respect to the Board's alleged noncompliance with section 24C-15 and a permanent injunction enjoining the Board from further violating the Illinois Election Code. The district court found that having dismissed the constitutional claims, no "federal case or controversy" remained to support jurisdiction and dismissed the declaratory judgment count. Plaintiffs now argue on appeal, for the first time, that state law remedies are inadequate to address "the violations to federal and constitutional rights" alleged in this lawsuit. The argument was not presented to the district court and is therefore waived. *Owens v. Auxilium Pharm., Inc.*, 895 F.3d 971, 974 (7th Cir. 2018). Notwithstanding the issue of waiver, Plaintiffs' argument fails.

The Declaratory Judgment Act permits a federal court to award a declaratory judgment only in "a case of actual controversy." 28 U.S.C. § 2201(a). This is the same case-or-controversy limitation placed on federal jurisdiction under Article III. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Federal courts have "no supervisory powers and no authority to instruct the Board how to follow state law." *Kasper*, 814 F.2d at 342.

And with respect to the prospective injunctive relief Plaintiffs' seek, the future harm "must be both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quotations omitted). "For purposes of standing to seek injunctive relief against future harm, courts generally assume that litigants 'will conduct their activities within the law and so avoid prosecution and conviction.'" *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974)). Without the dismissed constitutional claims, Plaintiffs "have alleged nothing more than garden variety election irregularities that could have been adequately dealt with through the procedures set forth in [Illinois] law." *Bodine v. Elkhart Cty. Election Bd.*, 788 F.2d 1270, 1272 (7th Cir. 1986).

**D. Motion to strike**

There is one other matter we must address: the Board's pending motion to strike Plaintiffs' appellate reply brief. Plaintiffs asked this court for leave to amend their filed reply brief and indicated that Plaintiffs wished to "add newly found case law and any associated analysis to their reply brief." We denied the motion and in unequivocal terms "decline[d] to permit the appellants to make substantive changes to their reply brief at this late stage." Plaintiffs were, however,

permitted to correct the procedural deficiencies in their reply brief that the clerk previously identified. Plaintiffs willfully disregarded our order and went ahead and resubmitted their reply brief with numerous substantive changes, without any signal they did so. This prompted the instant motion to strike and we took the motion with the case.

Given our preceding discussion and our holding, we deny the Board's motion as moot. In doing so, we do not countenance Plaintiffs' behavior. "A party must file one brief with the court, and to alter one version without informing the court is unethical." *Khan v. Midwestern Univ.*, 879 F.3d 838, 846 (7th Cir. 2018). We remind counsel, though we should not have to, that they must comply with the court's orders.

### III. Conclusion

Section 24C-15, and section 22-9.1 by incorporation, of the Illinois Election Code precludes the post-election audit of five percent of the electronic voting equipment from affecting any vote cast or the ultimate election results, and thus Plaintiffs cannot state a right to vote claim. Plaintiffs simply do not plead a plausible claim that the Board violated their right to freely associate or right to petition the government. We therefore affirm the district court's dismissal of Plaintiffs' second amended complaint with prejudice.