NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 3, 2022[*]
Decided February 7, 2022

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 21-2504

| | |
|---|---|
| EDWARD C. HANKS, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 20-cv-3125-JBM |
| NED HUBBARD, et al., *Defendants-Appellees*. | Joe Billy McDade, *Judge*. |

**O R D E R**

Edward Hanks, an Illinois inmate, sued medical providers at Western Illinois Correctional Center in Mount Sterling and the state's prison healthcare contractor for deliberate indifference and retaliation related to the allegedly inadequate medical treatment of a burst vein in his eye. The district court screened his second amended

---

[*] The appellees were not served with process and are not participating in this appeal. We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

complaint under 28 U.S.C. § 1915A and dismissed it for failure to state a claim. Because Hanks's conclusory and vague allegations do not state a claim, we affirm, but we modify the judgment to reflect a without-prejudice dismissal of his state-law claims.

The district court dismissed the first two complaints Hanks filed without prejudice, explaining that he advanced unrelated claims against numerous defendants, and made conclusory and vague allegations from which it could not discern a plausible claim. Hanks's third complaint gives a rough timeline of the events surrounding his eye injury, and we accept the complaint's factual allegations as true and draw all reasonable inferences in Hanks's favor. *See Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020).

On August 21, 2018, Dr. Ned Hubbard, a prison optometrist (but who Hanks refers to as an opthalmologist), prescribed antihistamine eye drops (ketotifen fumarate ophthalmic solution) for Hanks. Roughly twelve days later, Hanks experienced a subconjunctival hemorrhage—a burst vein—in his eye, and at the same time he lost his balance, experienced blurry vision, and suffered "extreme pains" that persisted for weeks. A few days after the vein burst, on September 5, Hanks visited an offsite eye doctor. There, a nurse asked Hanks if Dr. Hubbard was aware of all the medications Hanks was taking, and Hanks confirmed that he was. (He believes the nurse was alluding to a problem with interactions between medications.) Hanks describes no specific diagnosis or treatment from the offsite provider, who did not mention the cause of the burst vein and instructed Hanks to follow up with the prison healthcare unit about his pains. Dr. Hubbard examined Hanks the next day and told him that the burst vein might have been an allergic reaction.

Hanks obtained an appointment, scheduled for September 10, with a nurse practitioner, whom he refers to only as "Smith," about the pain in his eye and body. That visit was delayed for a few days by a lockdown at the prison. Hanks filed grievances against Dr. Hubbard about the lack of treatment until he met with Smith and another doctor on September 14. He received a prescription for muscle relaxants.

On September 23, Hanks experienced what he believes was "some kind of a stroke." He saw Smith, who prescribed a 30-day "lay-in" to help his pain and instructed him to use a warm, wet compress on his eye. Some days later (Hanks does not provide a specific date), Hanks's pain became "unbearable" in his left eye and side, and he continued to attribute his symptoms to a stroke. Smith and another nurse practitioner, Brittany Miller, did not think that Hanks had a stroke, and he felt mocked. Hanks got an X-ray—which he points out would not diagnose a stroke or soft-tissue pain—but no

MRI scan. Around the same time, in late September, Smith told Hanks that the vein in his eye had burst because of his blood-thinning medication.

Hanks sued Hubbard, Smith, and Miller, as well as their employer, Wexford Health Sources, Inc., under 42 U.S.C. § 1983. (Hanks dropped his claims against two nurses.) He alleged that Wexford had a policy "to meet a quota to service as many [of] the numerous inmates as speedily as possible with little regard for the seriousness or proper care of the illness." *See Monell v. Dep't Soc. Servs.*, 436 U.S. 658, 690–95 (1978). He further alleged that his medical treatments led to the burst vein and pain, and that he then received inadequate medical care for those conditions. And he asserted that the defendants violated his First Amendment rights by providing inadequate treatment because he had filed grievances about his medical care. Hanks also included state-law tort claims, which he characterized as conspiracy, "intentional infliction of pain and suffering," and respondeat superior.

Upon screening Hanks's second amended complaint, the district court concluded that he did not state a plausible claim. The *Monell* claim failed because he made only a bare assertion of a quota system. As to the First Amendment claim, Hanks did not allege that the defendants were aware of any grievances, nor, relatedly, that the grievances motivated their treatment decisions. Hanks's deliberate-indifference claim was equally vague and conclusory, in the court's view, because he offered nothing to suggest that the eye drops caused the burst vein or the stroke that he insists he suffered. Finally, the court concluded that the complaint was even more lacking in necessary detail to state a plausible claim under any other legal theory. The court determined that a third chance to amend would be futile and dismissed the complaint with prejudice.

On appeal, Hanks challenges the dismissal of the second amended complaint. He argues that the district court misconstrued his allegations and drew inferences against him. First, the court said Dr. Hubbard "placed" eye drops in Hanks's eye 12 days before his vein burst; in fact, Hanks alleged that he was "given" eye drops and "follow[ed] the instructions," which would mean he took them three times per day until his vein burst. He also objects to the court's comment that he had not explained why he visited the offsite provider, clarifying that it was because of the burst vein, and the court's failure to construe the nurse's question about his medications as a suggestion that an interaction between the eye drops and his other medications caused the burst vein.

Although the district court's ruling contains a few imprecise statements, none is material to its analysis, and, in any event, our review is de novo. *See Schillinger*, 954 F.3d

at 994. A complaint states a claim when the factual allegations allow a reasonable inference that the defendant is liable, and it contains enough detail to make the claim plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Schillinger*, 954 F.3d at 994. Hanks's operative complaint does not meet this standard.

First, the unadorned timeline of his treatment does not state a plausible claim under the Eighth Amendment. Defendants are liable for deliberate indifference when they know of a significant risk of serious harm and fail to take reasonable steps to prevent it. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Hanks states his conclusion that the eye drops caused the burst vein, the pain that came after, and a stroke; he faults the defendants for not treating these symptoms adequately and disbelieving that he had a stroke. But Hanks must plead more than a sequence of events. And the complaint tells a story of consistent medical attention, from the eye drops to address sensitivity, multiple examinations including a referral to a specialist, and ultimately more medication and a "lay-in" permit for the pain. None of that is consistent with deliberate indifference either before or after the burst vein, particularly because Hanks provides no reason to accept his self-diagnosis of a stroke when two medical providers opined there was none. *See Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)) (decisions about diagnostic tests are matters of medical judgment).

Further, no facts suggest that the eye drops presented a risk that the medical staff disregarded; it is not reasonable to assume the optometry nurse's question about medications was a medical opinion about what caused the eye problem. Given the responsive care Hanks received, his allegations are not consistent with negligence in the choice of treatment, let alone the more demanding standard of deliberate indifference. *See Farmer*, 511 U.S. at 835. A bald assertion about a defendant's state of mind does not make a deliberate-indifference claim plausible. *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 753 (7th Cir. 2021).

Second, Hanks's conclusory allegation that the medical staff provided poor medical care to punish him for filing grievances does not state a claim under the First Amendment. Defendants can be liable if they take action against a plaintiff because he engaged in activity protected by the First Amendment. *See 145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 766 (7th Cir. 2021). We do not require a complaint's allegations to line up with every element of the claim. *See Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). But we do require more than speculative and conclusory allegations, *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007), which is what we find in this complaint.

In particular, the complaint provides no basis for inferring a link between the grievances about medical care and the treatment Hanks received afterward from Smith and Miller. (Grievances naming Dr. Hubbard were attached to the first two complaints, but not the operative complaint, which includes no detail about them.) Even if the defendants knew about the grievances, which Hanks does not allege, nothing suggests that the defendants were motivated to punish Hanks for filing them, and the attentive medical care suggests otherwise. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (requiring "'causal connection' between the government defendant's 'reliatory animus' and the plaintiff's 'subsequent injury'"). Thus Hanks's twice-amended allegations do not state a First Amendment claim. *See Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 512–13 (7th Cir. 2020) (legal conclusions are not entitled to presumption of truth).

A heading in Hanks's brief suggests that he also stated a claim under the Fourteenth Amendment. He develops no argument, though, so we do not consider it. *See Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1062–63 (7th Cir. 2020). We also do not consider a *Monell* claim because on appeal Hanks makes no mention of any custom or policy being the source of the alleged constitutional violations. *See id.*

Hanks also does not raise any specific argument on appeal about his state-law claims, but there we can be more forgiving, because they are not separately addressed in the screening order. Although the district court dismissed the entire complaint with prejudice, we presume it did not intend to enter a preclusive judgment on the merits of the state-law claims without explanation. The "usual practice" with respect to claims falling under the supplemental jurisdiction, 28 U.S.C. § 1367, is to relinquish jurisdiction when all federal claims have been resolved short of trial. *Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017); *see* 28 U.S.C. § 1367(c)(3). We see no factor that cuts against that presumption here, and we therefore modify the judgment to clarify that the state-law claims are dismissed without prejudice. As so modified, the judgment is AFFIRMED.